## HARRY SHAPIRO *v.* BETTY SUE SHAPIRO

[No. 1183, September Term, 1982.]

*Decided April 18, 1983.*

The cause was argued before WILNER, ALPERT and BLOOM, JJ.

*Benjamin Lipsitz* for appellant.

*Allan Heneson,* with whom were *Gordon & Heneson, P.A.* on the brief, for appellee.

BLOOM, J., delivered the opinion of the Court.

Appellant, Harry Shapiro, and appellee, Betty Sue Shapiro, were married February 14, 1969. They had one child, Lonnie, born January 26, 1971. The parties separated in April 1976 and executed a separation and marital settlement agreement. On April 21, 1977, appellant filed a bill of complaint for divorce *a vinculo matrimonii,* in the Circuit Court for Baltimore City, and the parties have been in constant and continuous litigation ever since, with a brief hiatus from June 20, 1978, when the divorce decree was passed, to December 4, 1978, when appellant filed a petition to cite appellee's attorney for contempt.

As part of a hearing on January 6 and 7, 1981, the chancellor, over the objection of appellant's counsel, interviewed Lonnie in chambers with a court stenographer present but with the parties and their counsel excluded. Lonnie expressed great fear of his father, stated that he hated his father and never wanted to see his father, and described an incident in which a dispute between his parents over visitation led to physical violence which he characterized as an assault upon his mother and an attempt by his father to take him away from his mother. Lonnie pleaded with the chancellor not to force him to see his father.

After interviewing Lonnie, the chancellor met with counsel in chambers and the court reporter read to counsel what was said during the interview with Lonnie. This was followed by an informal discussion which included the parties and which led to an agreement between them. Pursuant to that agreement, on January 22, 1981, an order was entered in the case awarding custody of Lonnie to the appellee, *pendente lite;* directing that Lonnie undergo psychiatric evaluation by Dr. Robert B. Lehman, as agreed upon by the parties; directing that the parties undergo appropriate psy-

chiatric therapy as recommended by Dr. Lehman in order to establish a relationship between Lonnie and his father, with appellant to pay all expenses of such evaluation and therapy in excess of applicable insurance; awarding appellant reasonable visitation rights with Lonnie with such visitation, however, to commence and be in accordance with Dr. Lehman's recommendations; ordering appellant to pay appellee $7,200.00 in settlement of various items including an agreed counsel fee for her attorney, agreed balance of money due under a clause in the separation agreement, arrearages in child support, and costs; directing the manner of payment of the $7,200.00; ordering appellant to pay child support in the amount of $77.25 per week (with a suspension of a portion thereof for 120 days); providing that the child support be subject to modification after appellant made his 1980 income tax returns available to appellee and to the court, and after hearing by the court to evaluate the parties' income and expenses; and ordering appellee to dismiss certain suits and criminal charges she had brought against appellant.

This appeal is from a subsequent order, entered on February 24, 1982, which, *inter alia,* awarded permanent custody of Lonnie to appellee; provided that appellant "shall have no right of visitation with Lonnie until such time as Dr. Robert B. Lehman recommends that such visitation shall commence, and such visitation shall be on the terms, guidelines and at such places as recommended by Dr. Robert B. Lehman"; required appellant to pay appellee $77.25 per week or $334.49 per month as child support; and awarded appellee a monetary judgment against appellant in the amount of $5,279.00, encompassing arrearages in child support, money due under the original separation and marital settlement agreement and the counsel fee previously ordered. Appellant contends that the chancellor erred:

(1) in ordering that appellant have no visitation until Dr. Lehman recommends it and then only upon the doctor's terms and conditions;

(2) in conducting its interview with his son on January 7, 1981, outside the presence of appellant or his counsel;

(3) in entering a monetary judgment against him for $5,279.00 or for any amount;

(4) in awarding permanent custody of the child to the appellee; and

(5) in increasing child support.

Appellant's second, third, fourth and fifth contentions are completely without merit.

In a custody case, it is proper for the chancellor, in his discretion, to interview the child out of the presence of the parties, with or without the consent of the parties and with or without the presence of counsel. In all cases, unless waived by the parties, the interview must be recorded by a court reporter and immediately following the interview its content shall be made known to counsel and the parties by means of the court reporter's reading of the record to them. *Marshall v. Stefanides,* 17 Md. App. 364, 369, 302 A.2d 682 (1973).

Appellant contends, and the record tends to support him, that the court reporter read the content of the interview only to counsel and not to the parties, although the record also reflects that almost immediately after the reading there was an "off record discussion in chambers with the parties." However, appellant's only objection below was to conducting the interview out of the presence of counsel, not to the failure of the reporter to read to him the content of the interview. Consequently, that issue is not before us. Md. Rule 1085.

Appellant's complaint about the entering of a monetary judgment against him is based upon his contention that there was insufficient evidence to support it, i.e., that evidence as to the amount of arrearages was so confusing or conflicting as to be valueless. We find in the record no such confusion or conflict. On the contrary, we find direct and positive testimony as to arrearages in child support which, when added to other sums payable by appellant to appellee, clearly supported the entry of judgment in the amount of $5,279.00.

Appellant acknowledges that the award of permanent custody of Lonnie to appellee was within the discretion of the chancellor but urges that custody should have continued on a *pendente lite* basis until the conclusion of medical or psychiatric investigations, either by Dr. Jonas Rappaport (ordered January 16, 1979) or by Dr. Lehman. The record discloses, however, that appellant failed to keep appointments with, and pay fees to, Dr. Rappaport or to pay fees to Dr. Lehman in order to undergo further evaluation. It is also noteworthy that custody had been on a *pendente lite* status since October 1977. We find no error or abuse of discretion in the award of permanent custody. Md. Cts. & Jud. Proc. Code Ann. § 3-602(a) (1); *Ross v. Hoffman,* 280 Md. 172, 372 A.2d 582 (1977).

Appellant's complaint that the chancellor erred in increasing child support is predicated upon his contention that the record does not support the increase from $51.50 to $77.25 per week. We have examined the record, which includes evidence as to appellee's income and needs for herself and the child as well as appellant's income and assets, and find no clear error. Md. Rule 1086. Furthermore, the amount of child support awarded by the order of February 24, 1982, is the same amount awarded by the prior order of January 22, 1981, which, according to the record, was based upon an agreement of the parties.

The visitation aspects of the order of February 24, 1982, however, give us concern. Appellant complains that the order denying him visitation until Dr. Lehman should recommend otherwise effectively denies him visitation permanently because of Dr. Lehman's refusal to participate in any further evaluation, consultation or treatment until the balance of his fee was paid. It is tempting to dismiss this contention by pointing out that appellant who, jointly with his wife, had selected Dr. Lehman and who had agreed to pay his fees, could easily resolve this dilemma with a few strokes of his pen. That, however, would not cure what we perceive to be a fundamental defect in the order.

A parent whose child is placed in the custody of another person has a right of access to the child at reasonable times. Although the right of visitation is not an absolute right, it is an important natural and legal right. It must yield to the best interests of the child, but it would only be in an exceptional case and under extraordinary circumstances that the right of visitation will be denied. *See Radford v. Matczuk,* 223 Md. 483, 164 A.2d 904 (1960). In *Roberts v. Roberts,* 35 Md. App. 497, 371 A.2d 689 (1977), an order suspending visitation rights of an alcoholic mother with children in the custody of their father was reversed by this court, which commented that in no case prior to *Radford* or since, in the Court of Appeals or this court, had visitation rights been denied.

Dr. Lehman testified, in substance, that although even structured visits with his father were not in Lonnie's best interest, such court-ordered visitation "would not cause a total collapse of the youngster." Differentiating between "harm" and "best interest," he recommended additional psychotherapy so that "the youngster would be more receptive and the potential for the youngster to have a relationship with his father would be greater."

Recognizing the importance of establishing, or reestablishing, a relationship between Lonnie and his father, the chancellor attempted to accomplish that through Dr. Lehman. Although Dr. Lehman had not seen Lonnie or the parties for several months because appellant had stopped paying his bills, it is apparent from the record that the chancellor anticipated a resumption of payment followed by a resumption of treatment. During the doctor's testimony, the following colloquy occurred:

THE COURT: Let me ask this question: 'If he would resume paying and counseling started up again, could you give us any ballpark figure about how long it would take, or is that difficult to do?"

THE WITNESS: Ballpark figure for what?

THE COURT: For the father to have visitation with the son, each (sic) on a limited basis.

It is also apparent from his comments to the parties and counsel that the chancellor did not intend to terminate appellant's visitation rights but to suspend them temporarily until the relationship between Lonnie and appellant improved:

"Now, I think every father ought to have the right to visit his child. I have never denied any father the right of visitation on any kind of permanent basis. I didn't do so in this case. I think Mr. Shapiro should have a relationship with his son, and I think it can be brought about. However, it ought to be brought about by the intervention of a behavioral scientist like Dr. Lehman, who is trained in human behavior, who can prepare this child for visitation, and of course, I would hope — point out to both parties — some of the errors they are making in this child's development, and therefore I am going to grant visitation to Mr. Shapiro, conditioned, however, on the recommendation of Dr. Lehman, who will notify Mr. Shapiro and Lonnie when this visitation can be brought about. Hopefully, it will start out on a minimal basis and, of course, be extended.

I would hope, and I say to Mr. Shapiro, I hope that he would continue with Dr. Lehman and try to resolve this conflict between him and his son, and bring about some visitation."

The first difficulty with the visitation provisions of the February 24, 1982, order is that a denial of visitation "until such time as Dr. Robert B. Lehman recommends that such visitation shall commence" is, in effect, a total suspension of visitation rights — a denial of all access for an indefinite period.

An indefinite suspension of visitation was reversed in *Kemp v. Kemp*, 42 Md. App. 90, 399 A.2d 923 (1979), *rev'd*

*on other grounds,* 287 Md. 165 (1980). There, an eleven-year-old boy told the chancellor, in chambers, out of the presence of the parties, that he did not want to visit with his father; that visits with his father were "no fun" and "there was nothing to do"; that he disliked visiting with his father's second wife and her daughter; that his father yelled at him and did not love him; and that he did not wish to see his father. There, also, a psychiatrist expressed an opinion that visitation should not be reinstated or continued at that time; that the child was doing better since visitation had been interrupted; and that forcing the child to see his father would be "destructive to the future relationship between them."

Although Lonnie's negative feelings about his father — anger, hatred and fear — and the reasons for those feelings, particularly those related to the incident he characterized as an assault upon his mother, make this a somewhat stronger case then *Kemp,* the circumstances here do not present such an exceptional case as would justify an indefinite denial of all access by the father.

The second difficulty with the visitation provisions of the February 24, 1982, order is that a denial of visitation until such visitation is recommended by the child's physician and then only upon such terms, guidelines and at such places as the physician may recommend constitutes an improper delegation of judicial responsibility to the physician. *See In re Marriage of Matthews,* 101 Cal. App. 3d 811, 161 Cal. Rptr. 879 (Cal. 1980), in which the first District Court of Appeal held invalid a delegation of authority in a strikingly similar context.

Jurisdiction over custody and visitation, as well as guardianship, legitimation, maintenance and support of children, is vested in the equity courts. Md. Cts. & Jud. Proc. Code Ann. § 3-602(a). There is no authority for the delegation of any portion of such jurisdiction to someone outside the court.

It is entirely permissible for the chancellor to base his award of custody or his determination as to visitation on the opinions of experts, but the ultimate decision must be that of the chancellor, not the expert.

While it would not be inappropriate for the chancellor to provide for continuation of Lonnie's psychotherapy by Dr. Lehman or some other qualified therapist and order the appellant to pay for such treatment as he had agreed to do (*Cf. Kemp v. Kemp,* 287 Md. at 176), we believe that, absent some circumstances not evident in the record before us, provision for limited, structured visitation should be made and, if deemed necessary, that visitation be under supervision of a therapist or someone else designated by the chancellor.[1] Any order for visitation, hower limited, would necessarily contemplate periodic modification as circumstances warrant or require.

Accordingly, we will affirm the order of February 24, 1982, in all respects except for the provisions as to visitation. As to those provisions, we will reverse and remand.

> *Order affirmed in part and reversed in part and remanded for further proceedings in accordance with this opinion.*
> *Costs to be paid by appellant.*

---

1. We note that the appellee and Lonnie had obtained counseling from the Jewish Family and Children's Service. The court may wish to consider the possibility of further application to that agency for additional counseling or, perhaps, supervision of visitation.