**Dora M. HAMEL, Appellant,**

v.

**Charles HAMEL, Appellee.**

**No. 84–42.**

District of Columbia Court of Appeals.

Argued Feb. 20, 1985.

Decided March 21, 1985.

---

David P. Landau and Elbert R. Shore, Rockville, Md., for appellant.

Sanford K. Ain, Washington, D.C., with whom Laurence M. Kahn, Washington, D.C., was on the brief, for appellee.

Before NEWMAN, FERREN and TERRY, Associate Judges.

FERREN, Associate Judge:

Appellant Doris Hamel filed a motion to establish her visitation rights as the non-custodial parent. In response, the trial court ordered her to consult with a court-designated psychiatrist, who had met with the family for several years, so that the court, before ruling, could receive an expert recommendation for an appropriate visitation schedule. The court also ordered appellant not to visit with her children until she had met with the psychiatrist. Appellant contends that the court's order (1) improperly delegated to the psychiatrist the court's own judicial responsibility to determine visitation rights and (2) effected an impermissible, indefinite suspension of her visitation rights because of her demonstrated inability to work productively with that particular psychiatrist. We disagree with both contentions and thus affirm the court's order.

I.

Appellant and her former husband, appellee Charles Hamel, were divorced in 1976. At that time, appellant retained custody of the couple's two sons, David, then eight years old, and Jonathan, then twenty-two months old. After difficulties arose over appellee's visitation rights and his failure to make support payments, the parties filed cross-motions for contempt. Judge

Haywood denied both motions but requested the parties to confer and agree upon a "mediator" to help resolve their difficulties. Appellant proposed that the court appoint Dr. Edward W. Beal, a psychiatrist at Georgetown University, "as a mediator to establish an agreeable visitation schedule." Judge Haywood confirmed this arrangement by court order in May 1980. Dr. Beal subsequently submitted a report and proposed visitation schedule, which the court adopted. The court's order directed appellant to permit Dr. Beal to meet with the children and stated that the court would review the situation.

During the next two years, Dr. Beal met with both parties and their children many times. In May 1982, David chose to leave his mother's home to live with his father. He confided to Dr. Beal that his relationship with appellant had deteriorated and specifically complained that: (1) appellant would not permit him to bring friends to the house or to leave the house to play on a neighborhood playground; (2) appellant listened in on his telephone conversations with his father; (3) appellant confiscated small gifts given to the children by their father; and (4) whenever the children returned from visits with their father, appellant subjected them to "strip searches"—forcing them to disrobe while standing on a newspaper—followed by an immediate shower. Shortly thereafter, in August 1982, appellant stopped meeting with Dr. Beal.

Appellee then moved for a change of custody.[1] Dr. Beal filed a report and affidavit with the court supporting appellee's motion. In his report, Dr. Beal cited David's allegations which, according to Dr. Beal, were "substantially corroborated" by Jonathan. Dr. Beal also noted "non-compliance by [appellant] in allowing Jonathan to visit his father." He concluded that "[appellant's] emotional difficulties and irrational psychological state seriously interfere with the relationship of the children to their father and with the emotional maturity and functioning of the children themselves." During a lengthy hearing before Judge Walton, Dr. Beal testified as to the findings of his report and predicted emotional and social problems for Jonathan if he remained in appellant's care.[2] Judge Walton awarded custody to appellee and further ordered that all visitations between appellant and her sons be held in Dr. Beal's presence, that the parties continue to meet with Dr. Beal, and that "the visitation schedule is to be set at the discretion of Dr. Beal."

After the transfer of custody, appellant initially cooperated with Dr. Beal and attended all scheduled meetings with him. Upon discovering that appellant was engaging in unauthorized visits with Jonathan, however, Dr. Beal wrote the court, recommending that appellant's visits be limited to approximately one per month over the next six months. The court adopted Dr. Beal's recommendation. Appellant objected to this restriction and requested the appointment of an additional mental health professional. After a hearing, Judge Walton granted appellant's request and, at her suggestion, appointed Dr. William Bernet to "evaluat[e] [appellant's] present mental health" and to furnish a second opinion on Dr. Beal's proposed visitation schedule. Dr. Bernet submitted a written report to the court in which he characterized appellant as "serious[ly] depressed" and predicted "some danger [to Jonathan] in allowing visitations which are too frequent." Dr. Bernet further noted that

> Ms. Hamel ... expressed the view that Dr. Beal may have become prejudiced

---

1. Just before filing this motion, appellee obtained a Writ of *Ne Exeat* against appellant, enjoining her from taking Jonathan to Uruguay, where appellant's family lives. Appellant had planned a trip there with her son and in the past had "hidden" the children there from appellee.

2. Appellant's own expert witness, Dr. Williams, also testified. Dr. Williams apparently differed with Dr. Beal's testimony regarding appellant's emotional state and her relationship with her sons. A transcript of Dr. Williams' testimony, however, has not been certified to this court.

against her during 1982 and that led to his recommending the change in custody. In hearing from Dr. Beal how his thinking evolved during that period, I did not think that he had proceeded through bias or prejudice. It is my impression that more and more information came to his attention, primarily from David and Jonathan themselves, which led Dr. Beal to be very concerned about Jonathan's welfare. It is my impression at this point that Dr. Beal would still like for both of the boys to have satisfying relationships with both of their parents and that he is prepared to work toward that end.

Although he recommended increasing the frequency of visitations to twice monthly, Dr. Bernet suggested that the court retain Dr. Beal as a mediator "since he is familiar with what has happened and he already has a relationship with Jonathan." Following another hearing, Judge Walton directed Dr. Beal to submit a new visitation schedule in light of Dr. Bernet's recommendation and ordered appellant to continue meeting with Dr. Beal as a condition of visitation. Appellant refused to meet with Dr. Beal and, instead, moved to establish visitation rights. In her motion, appellant argued that the court had impermissibly delegated its judicial responsibility for determining a visitation schedule to Dr. Beal, and that the court's order requiring her to meet with Dr. Beal improperly suspended her visitation rights indefinitely because of her inability to consult productively with him. Judge Walton denied this motion.

## II.

■ Appellant now presents the same arguments to this court. She contends, first, that the trial court unlawfully delegated to Dr. Beal the responsibility for determining a visitation schedule. In support of this argument, she cites *Shapiro v. Shapiro*, 54 Md.App. 477, 458 A.2d 1257 (1983). In *Shapiro*, the Maryland Court of Special Appeals reversed in part a trial

court order awarding custody to the mother and providing that the father " 'shall have no right of visitation with [his son] until such time as [a court designated psychiatrist] recommends that such visitation shall commence, and such visitation shall be on the terms, guidelines and at such places as recommended by [the psychiatrist].' " *Id.* at 479, 458 A.2d at 1259. Noting that "the right of visitation ... is an important natural and legal right," *id.* at 481, 458 A.2d at 1260, the court concluded that this order was "in effect, a total suspension of visitation rights—a denial of all access for an indefinite period." *Id.* at 482–83, 458 A.2d at 1261. The court further characterized the order as "an improper delegation of judicial responsibility to the physician" because it provided that the psychiatrist, rather than the court, would decide when such visitation might commence and on what terms. *Id.* The court also observed, however, that "[i]t is entirely permissible for the chancellor to base his award of custody or his determination as to visitation on the opinions of experts, but the ultimate decision must be that of the chancellor, not the expert." *Id.* at 484–85, 458 A.2d at 1262.[3]

*Shapiro* is clearly distinguishable from this case. By its very terms, the trial court order in *Shapiro* provided that the psychiatrist would make all determinations as to visitation between father and son. In contrast, Judge Walton's order merely required appellant to meet with Dr. Beal so that Dr. Beal could tender a recommendation to the court. The court expressly retained ultimate authority to determine the terms and conditions of visitation between appellant and Jonathan, remarking:

[I]t is clear the Court never intended to delegate, and at present has not delegated, its obligation to decide [appellant's] right to visitation to Dr. Beal. The Court has only decided that it is in need of professional assistance in properly sched-

---

**3.** The Maryland court also affirmed the propriety of ordering continued psychotherapy for the child and requiring that visitations be made

under the supervision of a therapist designated by the chancellor. 54 Md.App. at 484–85, 458 A.2d at 1262.

uling and monitoring such visitations. Having concluded that the assistance of a professional mediator is essential to insure that the children's mental health is not further injured, ... the Court has done nothing more than what the [*Shapiro* court] said was appropriate.

We agree with the trial court and find no improper delegation here.

### III.

Similarly, we disagree with appellant's contention that the court's order improperly caused a total suspension of her visitation rights because of her demonstrated inability to work productively with Dr. Beal. We note at the outset that the law favors visitation, and that " '[t]he denial to a parent of [her] right of visitation with [her] children, who are in custody of the other parent, is a drastic action ... justified only in extreme cases.' " *Jackson v. Jackson*, 461 A.2d 459, 460 (D.C.1983) (citation omitted); *see Surrey v. Surrey*, 144 A.2d 421, 423 (D.C.1958); *Shapiro*, 54 Md. App. at 481, 458 A.2d at 1260. Moreover, "[e]ven if the mother is mentally ill, this would not ipso facto deprive her of the privilege of seeing her children." *Surrey*, 144 A.2d at 423.

It undoubtedly would be improper for a court to suspend visitation until such time as a physician deems appropriate, as the chancellor directed in *Shapiro*. That is not the case here, however. The court suspended visitation only until Dr. Beal could submit proposals. The court considered it necessary for appellant to meet with Dr. Beal only in furtherance of this limited objective; it indicated no intention to suspend visitation indefinitely. Unlike the fa-

ther in *Shapiro*, appellant could resume visitation as soon as she complied with the court's order. Restoration of visitation was not contingent on Dr. Beal's assessment of appellant's progress.

The issue thus becomes whether the court could permissibly impose such a condition, temporarily suspending visitation rights, on appellant. We have held that " '[t]rial court determinations of ... visitation rights ... are subject to reversal only for clear abuse of discretion.' " *Jackson*, 461 A.2d at 460 (quoting *Moore v. Moore*, 391 A.2d 762, 770 (D.C.1978)). A proper exercise of discretion requires that a court "fashion relief to foster and safeguard [the] child's best interests." *Moore*, 391 A.2d at 769; *accord Jackson*, 461 A.2d at 461. Although terms and conditions of a visitation schedule are "best left to the discretion of the trial court," *Nancy E.M. v. Kenneth D.M.*, 316 Pa.Super. 351, 360, 462 A.2d 1386, 1389 (1983), courts customarily consider the testimony of experts in formulating an equitable arrangement. *See, e.g., Rinehimer v. Rinehimer*, —— Pa. Super. ——, ——, 485 A.2d 1166, 1169 (1984). When a noncustodial parent's mental condition is properly at issue in determining visitation rights, it is entirely appropriate for the trial court to solicit professional opinion.[4] *Shapiro*, 54 Md.App. at 481, 458 A.2d at 1260. Indeed, this court has held that a trial court abuses its discretion by failing to consider such testimony when offered by the parent seeking visitation. *Bowman v. Bowman*, 210 A.2d 8, 9 (D.C. 1965). It follows that the court's authority to seek expert opinion necessarily includes the power to require the parties to cooperate with such experts.[5] *See Miriam R. v.*

---

4. Some state statutes require consideration of the parties' mental health. *See Milanovich v. Milanovich*, Mont. 655 P.2d 959, 961 (1982) (trial court obligated to consider expert testimony on mother's mental health where statute requires consideration of parents' "mental and physical health").

5. Appellant has specifically objected to the court's selection of Dr. Beal, complaining that she is unable to work effectively with him. The

record suggests, however, that her dissatisfaction with Dr. Beal developed as a result of his determinations that her interactions with her sons were adversely affecting their emotional well-being. Appellant had initially selected Dr. Beal and had apparently enjoyed a harmonious relationship with him until he became concerned over her parenting practices as confided to him by David Hamel. This was the conclusion of Dr. Bernet, who was also selected by appellant. Although the trial court might have

*Arthur D.R.*, 85 A.D.2d 624, 445 N.Y.S.2d 19 (1981).

Although appellant maintains that there is insufficient evidence of danger to Jonathan to justify the court's temporary restriction, the record is replete with indications that professional intervention was warranted. Both Dr. Beal and Dr. Bernet reported that appellant's relationship with her son posed the likelihood of future emotional and social difficulties for him and thus required monitoring. Appellant's interactions with the children have already caused them considerable anxiety, in these physicians' opinions. In light of the narrow purpose for the court's suspension of visitation and the paramount interest to be served by obtaining expert opinion, we cannot conclude that the court's order represented an unreasonable restriction of appellant's visitation rights. We perceive no abuse of discretion.

*Affirmed.*

considered appointing a new therapist to monitor visitations, it is possible that appellant would encounter difficulties working with any therapist who did not fully share her views. Moreover, the trial court reasonably concluded that Jonathan's interests would best be served by continuing his relationship with Dr. Beal, with whom he was already familiar, a view shared by Dr. Bernet.