Glenn M. LEWIS, Appellant,

v.

Kathy J. LEWIS, Appellee.

No. 92–FM–358.

District of Columbia Court of Appeals.

Submitted Dec. 1, 1993.
Decided Feb. 3, 1994.

E. Marie Wilson–Lindsay, Washington, DC, was on the brief, for appellant.

Kathy Lewis, pro se.

Before FARRELL and WAGNER, Associate Judges, and MACK, Senior Judge.

FARRELL, Associate Judge:

This appeal from a judgment of absolute divorce, award of custody and child support, and distribution of property presents two issues: Did the trial court err in investing the wife with "complete discretion" over visitation between the children of the marriage (two boys) and their father (appellant) while the latter serves a term of imprisonment;

and did the court err in ordering the husband to pay $50 per month in child support while he is in prison, the accumulated amount to be a debt payable after his release from prison? As to the first, we conclude that even the unusual circumstances of this case did not permit the trial court to relinquish to a party the responsibility for deciding whether, or when, visitation should be required as in the best interest of the children. We also hold that the award of child support accruing and payable *in futuro* was unauthorized by our decisions or the Child Support Guideline. We therefore reverse these portions of the trial court's judgment and remand for further proceedings.

## I.

Ms. Lewis filed this suit for absolute divorce on March 27, 1990. The case came on for trial in two stages. Judge Long, after hearing testimony, entered a decree of divorce and awarded permanent custody of the minor children to the mother. Of importance here, she determined that appellant had pled guilty to shooting Ms. Lewis and was awaiting sentencing on that criminal charge, and that, as a result, Ms. Lewis would "be awarded complete discretion to permit visitation by the defendant, without prejudice to defendant's option of filing an appropriate motion for visitation after he is released from incarceration in [the criminal case]." Issues of child support and division of property were then tried before Judge Kramer. She heard testimony about the circumstances of the shooting and the fact that appellant, meanwhile, had been sentenced for assaulting Ms. Lewis with intent to kill and possessing a firearm during commission of that offense, with the result that he would be imprisoned until at least August of 1998.[1] Judge Kramer also heard testimony about the psychological condition of the children and the mother in the wake of the shooting, including the fact that all were undergoing weekly therapy. Based upon this testimony, she considered again the question of visitation and found

that visitation should not occur between the children and their father until such time as they are psychologically prepared for it. That decision must be left to the discretion of plaintiff, who will have access to the therapeutic information with respect to the children.

Although Judge Kramer did not use the phrase "complete discretion" employed by Judge Long, and did not expressly postpone appellant's right to move for court-ordered visitation until his release from prison, we have no indication from her findings or order that she viewed the matter differently from Judge Long. On the contrary, she concluded:

> The shooting of the plaintiff by the defendant has caused significant emotional distress to the children, who are receiving weekly therapy. Moreover, visiting their father in prison would itself be a potentially traumatic experience. Thus, *in accordance with the findings of Judge Long*, the court concludes that plaintiff should be awarded discretion to decide on the visitation between the defendant and the minor children. [Emphasis added.]

The court's formal order again stated that "the plaintiff, Kathy J. Lewis, is given discretion to determine whether the minor children should visit defendant, Glenn M. Lewis...."

With respect to child support, Judge Kramer first considered the matter of arrearages in appellant's outstanding support obligation (a subject appellant does not raise on appeal), then recognized that "the defendant is in a different posture with respect to a new order for child support" given that "[h]is income at the present time is essentially nothing." Yet the judge also applied the "well-settled law ... that if a husband's inability to pay child support is self-inflicted," as she concluded it was here, "the inability will not be a reason for reducing the amount of support," citing *Tydings v. Tydings*, 349 A.2d 462, 463–64 (D.C.1975). The judge, therefore, ruled as follows:

---

1. Appellant had received cumulative sentences totalling eight to twenty-seven years, which, according to Judge Kramer's calculations (allowing for application of good time credits), meant that

he would serve 87 months in prison beginning on May 2, 1991, making him eligible for parole in August 1998.

[I]n fashioning a new order, the court does not believe that there is a basis for imposing the [Child Support] Guideline amount of $566 and concludes that only the minimum amount of $50 should be imposed. *See* D.C.Code § 16–916.1(e)(2) [Supp. 1993].[4] While defendant will obviously not be subject to contempt for failure to pay this order so long as he is incarcerated, each monthly payment which goes unsatisfied will constitute a judgment. Given defendant's education and history of employment,[2] defendant almost certainly will be in a position to pay the minimal debt upon his release.

---

4 This section reads, "A non-custodial parent with gross income below $7,500 shall be treated on an individual basis and, in nearly all cases, shall be ordered to pay at least a nominal sum of $50.00 per month."

## II.

■■ The issue before us, as concerns visitation, is not whether either of the trial judges was required to order visitation between the children and their father currently or in the near future. Judge Kramer found, after hearing testimony by Ms. Lewis, that "[t]he shooting of the plaintiff by the defendant has caused significant emotional distress to the children, who are receiving weekly therapy." We are in no position to dispute this finding, as appellant has not furnished us with the transcript of either portion of the two-stage trial. *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111–12 (D.C.1982).[3] Judge Kramer also reasoned that "[t]he knowledge of [appellant's] violent act will remain with both the plaintiff and the parties' sons for the foreseeable future," and that "visiting their father in prison would itself be a potentially traumatic experience" for the children. We

2. The court found that before his arrest appellant had been earning $38,152.68 a year from his employment with the Government Printing Office, and that he had "a good educational background and an extensive employment history."

3. In the circumstances of this case, and particularly without a transcript of the testimony upon which the trial judge relied, we reject appellant's suggestion that Judge Kramer could not properly deny current visitation without requiring a psychiatric report or similar testimony. *See Cobb v. Standard Drug Co.,* 453 A.2d at 111. Given our holding, however, that the trial court must retain authority over the visitation question, these infor-

may concede both of these facts as well. The issue before us, however, is simply whether the trial court could properly vest "complete discretion" in the mother over whether the children will be allowed to see their father until he is released from prison, presumably in 1998. Our decisions do not support this total relinquishment of authority to the custodial parent over the question of visitation.

■■ Trial court determinations of visitation rights are, of course, "subject to reversal only for clear abuse of discretion." *Jackson v. Jackson,* 461 A.2d 459, 460 (D.C.1983) (quoting *Moore v. Moore,* 391 A.2d 762, 770 (D.C.1978)). Too, "[a] proper exercise of discretion requires that a court 'fashion relief to foster and safeguard [the] child's best interests.'" *Hamel v. Hamel,* 489 A.2d 471, 475 (D.C.1985) (quoting *Moore,* 391 A.2d at 769). Here, those interests support the court's refusal to order visitation rights so long as the children continue to suffer emotional injury from the father's attempt to kill their mother. As Judge Kramer found, "visitation should not occur ... until such time as [the children] are psychologically prepared for it." It is equally true that the mother, who far more than appellant "will have access to the therapeutic information with respect to the children," must assist the court in the decision as to when that time has arrived. But that decision may not be delegated to the custodial parent. In *Hamel, supra,* we had occasion to state that "[i]t undoubtedly would be improper for a court to suspend visitation until such time as a physician deems appropriate," 489 A.2d at 475, citing the situation in *Shapiro v. Shapiro,* 54 Md.App. 477, 458 A.2d 1257 (1983).[4] In *Shapiro,* the trial

mational sources will be available to the court in any future consideration of the issue.

4. In *Hamel,* the appellant claimed that the trial judge had delegated the responsibility for determining the visitation schedule to a court-appointed psychiatrist. We rejected that argument, stating that the court had only suspended visitation until the appellant met with the psychiatrist and the latter submitted reports: "appellant could resume visitation as soon as she complied with *the court's* order. Restoration of visitation was not contingent on [the psychiatrist's] assessment of appellant's progress." 489 A.2d at 475 (emphasis added).

court's order awarding custody to the mother provided that the father would have no right to visitation with his son until a court designated psychiatrist " 'recommends that such visitation shall commence, and such visitation shall be on the terms ... recommended by [the psychiatrist].' " *Id.* 458 A.2d at 1259. In reversing the order, the Maryland Court of Special Appeals characterized it as "an improper delegation of judicial responsibility to the physician," since—though the trial court could base its visitation decision on the opinions of experts—"the ultimate decision must be that of the chancellor, not the expert." *Id.* at 1261–62.

There is no material difference between improperly delegating the visitation decision to a psychiatrist and relinquishing the same responsibility to a parent. As we disapproved the one in *Hamel* (if in dicta), so we hold here that the latter improperly commits to the parent a decision that ultimately must remain with the trial court. Neither the shooting nor appellant's imprisonment could relieve the trial court of a responsibility which the law entrusts to it. On remand, the trial court should fashion a visitation order which reflects its ultimate retention of authority over the subject.

### III.

■■■ We likewise vacate the order requiring appellant to pay $50 per month in child support—a debt or judgment deferred until his release from prison. *See* D.C.Code § 30–504(b) (1993) (award of child support "is a money judgment ... upon which execution may be taken, when it becomes due"). No doubt the order was well-intentioned: appellant's shooting his wife (and being convicted) had the effect of reducing his income available for child support from approximately $550 a month to zero, with predictable hardship for the children. But our decisions refusing to let a spouse profit from a "self-inflicted" reduction in income do not have this sort of situation in mind. *Voluntary*

reduction of income or self-imposed curtailment of earning capacity ordinarily does not affect the spouse's obligation to pay. *See Tydings,* 349 A.2d at 464. "[A] parent subject to a court order to support children cannot escape that duty by voluntarily reducing his or her income, either by a self-imposed curtailment of earning capacity ... or by starting a second family." *Freeman v. Freeman,* 397 A.2d 554, 556 (D.C.1979). But neither example applies here. While appellant shot his wife voluntarily, no one has ever suggested that he did so with the purpose to be arrested, spend the next seven years and more in prison, and thereby reduce his income. The rule that prevents a parent from evading child support responsibility by voluntarily reducing income presupposes an ability to have maintained that income, which is not the case here.

Before enactment of the Child Support Guideline, D.C.Code § 16–916.1 (Supp.1993), it was well established that a spouse's obligation to pay child support depended upon his or her ability to pay. *E.g., Smith v. Smith,* 427 A.2d 928, 931–32 (D.C.1981). The Guideline adheres to this principle by recognizing that in rare cases even "a nominal sum of $50.00 per month" would be an inappropriate award of child support. D.C.Code § 16–916.1(e)(2) ("in nearly all cases" at least that sum shall be ordered). *See also Garcia v. Andrade,* 622 A.2d 64, 66–67 (D.C.1993). This is such a case. Appellant faces lengthy incarceration for his crimes. The trial judge assumed, as do we (absent any contrary showing), that appellant's income while in prison will be "essentially nothing."[5] Whatever the philosophical aims of punishment, it seems to us problematical to add to the terms of imprisonment a cumulating debt of child support which the prisoner cannot presently pay and which will await him upon release.[6] From the standpoint of rehabilitation, at least, ordering deferred child support for the length of imprisonment may have its own unintended consequences.

---

5. Had there been evidence presented that appellant can earn income in prison sufficient to satisfy a monthly support obligation of $50, the result might of course be different.

6. We refer, of course, to the current obligation accruing while appellant is imprisoned. Shooting his wife, and being convicted and imprisoned therefor, cannot affect his obligation for past arrearages.

Furthermore, we note that the trial judge, quite properly, took account of the "lost child support" resulting from appellant's imprisonment (an amount she calculated, without dispute, at $38,700) in awarding Ms. Lewis ownership of the family home as part of the property division. The judge viewed this as only partial ("some sort of") compensation for the lost child support, but we conclude that she lacked authority to supplement it by an order for child support which appellant presently cannot pay.

Accordingly, as to visitation and child support, the judgment is vacated and the case remanded for further proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

*So ordered.*

**B.J.P., Appellant,**