**Roger C. MAYBIN, Appellant**

v.

**Alexandra STEWART, Appellee.**

**No. 99–FM–1046.**

District of Columbia Court of Appeals.

Submitted Feb. 10, 2005.

Decided Oct. 14, 2005.

Roger C. Maybin, filed a brief pro se.

No brief was filed on behalf of appellee. Ranelle Humbles Zapata, entered an appearance for appellee.

Before WASHINGTON, Chief Judge, and TERRY and WAGNER, Associate Judges *.

---

* Judge Wagner was Chief Judge of the Court at the time this case was submitted. Her status

TERRY, Associate Judge:

This is an appeal from a trial court order imposing restrictions on appellant's right to visit his daughter and awarding attorney's fees to the daughter's mother. Appellant presents various challenges to that order; we find them all without merit and, accordingly, affirm the order in its entirety.

## I

Devon Stewart was born on January 30, 1987, to appellee Alexandra Stewart. A paternity test established that appellant Roger Maybin was Devon's father.[1] Mr. Maybin had no contact with either Ms. Stewart or Devon until almost seven years later when, on November 30, 1993, he filed a "Complaint for Joint Custody." When Mr. Maybin also filed a motion for visitation, the trial court ordered a home study of his residence, along with mental health evaluations of Mr. Maybin, Ms. Stewart, and Devon. The evaluations were performed in June and July 1994. After they were completed, a psychiatrist concluded that Ms. Stewart should retain sole custody of Devon, and strongly recommended that any father-daughter visits be supervised "until maybe one or two years have passed and Devon can feel some degree of comfort with Mr. Maybin." Thereafter Mr. Maybin had supervised visits with his daughter on several occasions.

On October 27, 1994, the trial court entered a consent order setting certain guidelines for visitation between Mr. Maybin and Devon. The order provided that Mr. Maybin, Ms. Stewart, and Devon should see a family therapist in order to establish a "satisfactory relationship" between father and daughter and to reduce the tension between Mr. Maybin and Ms. Stewart, and directed that the therapy should continue until the therapist determined it was no longer necessary. It further stated that "[v]isitation may be expanded, and become unsupervised, when the therapist indicates such a change is appropriate."

The parties disagree as to what happened next. Mr. Maybin asserts that Ms. Stewart essentially prevented him from seeing or talking to his daughter, though he was able to see her at least once after the order was entered. Ms. Stewart maintains that she did not bar contact between the two. In any event, Mr. Maybin ceased his attempts to visit his daughter in early 1995. He did not renew those attempts until June of 1998, when he filed a "Motion to Enforce Consent Decree for Visitation and to Expand Visitation Order." Ms. Stewart opposed the motion, and a hearing was held[2] on May 18 and 26, 1999.[3] At

changed to Associate Judge on August 6, 2005.

Judge Washington was an Associate Judge of the Court at the time this case was submitted. His status changed to Chief Judge on August 6, 2005.

1. The paternity test was performed at the request of Mr. Maybin when Ms. Stewart first summoned him to court seeking child support. It is unclear when the child support action was filed, but the transcript of an unrelated custody hearing suggests that it was within a few months after the child's birth.

2. Because the judge who entered the original order in 1994 had retired and left the court, the hearing was held before a different judge who had no prior knowledge of the case.

3. The docket entries confirm that the hearing began on May 18 and was then continued until May 26. A transcript of the May 18 proceedings is in the record, but no transcript of the May 26 hearing is available because, according to the trial court, "the tape that recorded the session on May 26 when this case was concluded is damaged and cannot be restored . . . ."

Mr. Maybin asserted below that the second hearing was held on May 19 (not May 26) and

the close of the hearing, the trial court entered an order denying appellant's motion. The order directed that all parties see a therapist before visitation resumed, and further provided that once visitation was reinstated, it would be supervised. The court also awarded attorney's fees to Ms. Stewart in the amount of $1,600. Appellant filed a timely notice of appeal.

## II

Appellant argues that "the trial court abused its discretion when it ruled that [he] could only exercise his 'supervised' visitation rights if he submitted to counseling . . . ." He maintains that the initial 1994 order required counseling only for unsupervised visits, and that, absent a material change in circumstances, the trial court should not have required counseling for supervised visitation when the matter was reconsidered in 1999.

■■■ "The right of visitation is an important, natural and legal right, although it is not an absolute right, but one which must yield to the good of the child." *Sampson v. Johnson,* 846 A.2d 278, 286 (D.C.2004) (citation omitted). We will reverse a trial court's ruling on the subject of visitation only for a clear abuse of discretion. *Lewis v. Lewis,* 637 A.2d 70, 72 (D.C.1994). "A proper exercise of discretion requires that a court 'fashion relief to foster and safeguard [the] child's best interests.'" *Hamel v. Hamel,* 489 A.2d 471, 475 (D.C.1985) (citations omitted).

■■■ We are satisfied that the trial court did not abuse its discretion when it required the parties to attend counseling sessions before further visits could take place. While it is true that a party who seeks to modify a custody order must demonstrate "that there has been a substantial and material change in circumstances and that such modification . . . is in the best interest of the child," D.C.Code § 16–911(a–2)(4)(A) (2001), that principle does not apply here because there was no modification in this case. The court's 1999 order cannot be regarded as a modification of the original 1994 order;[4] rather, it temporarily suspended any supervised visits until the therapist could meet with Mr. Maybin and his daughter to prepare them for reinstatement of visitation.

It is undisputed that Mr. Maybin stopped visiting and calling his daughter in January of 1995. More than three years went by before he asked the court to "enforce" and "expand" the original 1994 visitation order. At the hearing on Mr. Maybin's motion, his daughter—then twelve years of age—testified: "[B]asically he's a stranger to me. I don't know him. And I don't—I already have people taking me places. It's all arranged. We're fine and we don't need anyone else." She continued: "[H]e's not a person that I would like to get to know because he had visitation—well, yeah, he had visitation, and he stopped that without any explanation at

submitted to the trial court a proposed "Statement of Proceedings and Evidence" for that date. The court, however, disapproved that Statement because "no proceedings took place on May 19" and because Mr. Maybin's statement "utterly fails to include the position taken at the hearing on May 26 by [Ms. Stewart] . . . on either the needs of the child . . . or the attorney fees." Because Mr. Maybin's proposed Statement was never "settled and approved" by the trial court, we cannot and

do not consider it as part of the record on appeal. *See* D.C. Ct.App. R. 10(c).

4. Indeed, neither party asked for a modification of the order. Mr. Maybin filed a motion to "enforce" and "expand" the 1994 order in which he asked the court to grant unsupervised visitation, but that is not the same thing as requesting a modification due to changed circumstances.

all.... He didn't want me. If you don't want me, I don't want you."

In these circumstances, we cannot agree with Mr. Maybin that it was an abuse of discretion for the trial court to determine, after hearing evidence from all parties (including the child), that simply resuming visitation as if there had not been a three-year gap in the father-daughter relationship would be detrimental to Devon's best interests. Moreover, the court acted with appropriate caution when it required that the parties submit to counseling before resuming any kind of visitation. *See Surrey v. Surrey,* 144 A.2d 421, 424 (D.C.1958) (decision to order a party to submit to a mental or physical examination is discretionary). Mr. Maybin was not denied the right to visit his child. The court was merely considering Devon's best interests, as it was obliged to do, when it placed conditions on the visitation. We find no abuse of discretion here. *See Hamel,* 489 A.2d at 475 (court did not abuse its discretion when it suspended visitation pending psychiatric evaluation of mother and visitation proposal from psychiatrist).

### III

■ Mr. Maybin next argues that the trial court erred in awarding attorney's fees to Ms. Stewart. He claims that he "had an unfettered right to avail himself of the legal process for resolution of a claim that was not frivolous and is meritorious." We conclude that the court appropriately awarded attorney's fees.

■ As this court stated almost twenty years ago:

[O]ur scope of review [of an award of attorney's fees] is a limited one because disposition of such motions is firmly committed to the informed discretion of the trial court. Therefore, it requires a very strong showing of abuse of discre-

tion to set aside the decision of the trial court.

*Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986) (citation omitted). A trial court "is authorized to grant attorney's fees 'where the court finds that counsel was necessary to protect the interests of the [child].'" *Prost v. Greene,* 675 A.2d 471, 474 (D.C.1996) (citation omitted). Thus, "when counsel is required by the party in whose custody the court has deemed to have been in the [child's] best interests, attorney's fees may be granted to that party in defending such grant." *Id.* (citing *Eisenberg v. Eisenberg,* 357 A.2d 396, 401 (D.C.1976)).

While it is true that the record of the hearing is incomplete, and thus we do not know exactly why the court awarded attorney's fees to Ms. Stewart, the court did partially explain its reasoning in the order disapproving appellant's proposed Statement of Proceedings and Evidence: "The court does not recall all the factors that contributed to awarding of attorney's fees, other than some evidence that Mr. Maybin had been needlessly litigious without visiting and without making informal attempts to obtain the visitation he sought."

The existing record supports this reasoning. Mr. Maybin himself admitted that he ceased all visitation attempts in 1995 and did not resume them until 1998 when he filed his motion. Instead of following through with the terms of the 1994 order, he brought appellee back to court to "enforce" something that he had essentially abandoned. When this happened, Ms. Stewart, who had had custody of Devon throughout the intervening years, necessarily had to retain counsel to defend her child's best interests. We discern no abuse of discretion, or any other legal error, in the trial court's determination that under these circumstances Ms. Stewart was entitled to attorney's fees.

## IV

 Finally, Mr. Maybin maintains that the trial court erred in failing to make findings of fact and conclusions of law under Super. Ct. Dom. Rel. R. 52(a) in ruling on his motion. This claim is also without merit.

Rule 52(a) provides in pertinent part:

In all actions tried upon the facts the Court shall make written findings of fact, separate conclusions of law and judgment .... If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.... *Findings of fact and conclusions of law are unnecessary on decisions of motions under [Rule] 12 or [Rule] 56 or any other motion except motions to modify an order of the Court* and except as provided in [Rule] 50. [Emphasis added.]

By the clear terms of the rule, it was "unnecessary" for the trial court to issue written findings of fact and conclusions of law because neither Mr. Maybin nor Ms. Stewart had made a motion to modify an order of the court. Rather, the motion simply outlined Mr. Maybin's alleged failed attempts to visit Devon from 1994 to 1995 and asked the court to "issue an Order granting unsupervised visitation." Requesting enforcement of an order which appellant himself effectively abandoned, and asking that visitation resume unsupervised, is not at all the same as requesting a modification of a previous order. *See, e.g., Wallace v. Warehouse Employees Union,* 482 A.2d 801, 803–804 (D.C.1984) (the nature of a motion is determined by the relief sought, not by its label or caption). Thus this case is different from such cases as *Foster–Gross v. Puente,* 656 A.2d 733, 734–735 (D.C.1995), in which we held that the court erred when it failed to make written findings of fact and conclusions of law after a parent filed a motion to modify custodial arrangements on account of a material change is circumstances. We hold that the trial court committed no error in failing to prepare written findings of fact and conclusions of law.[5]

## V

The order from which this appeal is taken is therefore

*Affirmed.*

---

**5.** It may well be that the court made oral findings of fact and conclusions of law from the bench on the second day of the hearing, but because that transcript is unobtainable, we have no way of knowing whether the court did so or what it may have said.