24 A.3d 241

**Stephen VAN SCHAIK**

v.

**Judith VAN SCHAIK.**

**No. 1924, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

July 11, 2011.

Susan J. Stauffer, Annapolis, MD, for appellant.

Maureen D. Keogh (Law Offices of Dennis J. Farina, on the brief), Denton, MD, for appellee.

Panel: WOODWARD, ZARNOCH, CHARLES E. MOYLAN JR. (Retired, Specially Assigned) JJ.[1]

WOODWARD, J.

Appellant, Stephen Van Schaik, and appellee, Judith Van Schaik, were awarded joint legal and physical custody of the parties' minor children. On March 14, 2010, appellant moved the children from Maryland to South Carolina without informing appellee. After the Circuit Court for Caroline County issued an ex parte order awarding appellee sole custody of the children, appellee traveled to South Carolina and retrieved the children. Thereafter, two hearings were held before the circuit court—an emergency hearing on April 9, 2010, and a merits hearing on July 22 and July 27, 2010.

Following the merits hearing, the circuit court awarded sole legal and primary physical custody of the children to appellee, with visitation granted to appellant. This appeal arises from orders of the court regarding: (1) the appointment of the children's best interest attorney as the "tie-breaker" to resolve any future disagreements between the parties regarding their children; (2) the payment of the best interest attorney's outstanding legal fees; (3) the best interest attorney's authority to decide how to apportion her legal fees between the parties in future disputes; and (4) the payment of appellee's attorney's fees.

Appellant presents four questions for our review, which we have rephrased:

I. Did the circuit court err by designating the minor children's best interest attorney as the "tie-breaker" decision-maker if the parties cannot reach a mutual

---

1. Judge Christopher B. Kehoe did not participate in the Court's decision to report this opinion pursuant to Md. Rule 8–605.1.

agreement on future disputes regarding the minor children?

II.  Did the circuit court err in holding the parties jointly and severally liable for the outstanding legal fees of by the minor children's best interest attorney?

III.  Did the circuit court err by delegating authority to the minor children's best interest attorney to apportion between the parties any legal fees that she incurs in resolving future disputes regarding the minor children?

IV.  Did the circuit court err by ordering appellant to pay appellee's attorney's fees?

For the forgoing reasons, we shall affirm in part, vacate in part, and remand the case to the circuit court with instructions.

## BACKGROUND

The parties are the parents of two minor children, Brandon, born on November 13, 1994, and Jacob, born on October 4, 1996.  The parties were divorced on June 25, 2001.  In an order filed on December 17, 2003, the circuit court awarded the parties joint legal and physical custody of the children. The order provided that, during the school year, appellant would have the children "from five o'clock p.m. Sunday, until the end of the school day on Thursday," and appellee would have the children overnight on Thursdays.  Also during the school year, each party would have the children on alternate weekends "from five o'clock p.m. Friday, until five o'clock p.m. Sunday."  Pursuant to the order, appellee was granted physical custody of the children for eight weeks during the summer, with appellant to have the children for two weeks each summer.

In August 2009, appellant's girlfriend, Joan Cutchin, moved from Maryland to South Carolina to take a new job.  Appellant continued to reside in Maryland, but visited Cutchin in South Carolina every other weekend.  Although appellant did not have immediate plans to move to South Carolina, he

testified that he informed appellee that such a move "was a possibility." Appellant also informed Brandon and Jacob that he was looking for a house in South Carolina and that they were "going to move down there" if Cutchin's job "stay[ed] stable."

On March 14, 2010, appellant moved Brandon and Jacob to South Carolina. Brandon and Jacob were not made aware of the move until after they arrived in South Carolina. In addition, appellant did not notify appellee of his plans to move the children to South Carolina.

On March 16, 2010, appellee contacted Brandon's and Jacob's schools and was informed that their records had been transferred to schools in South Carolina. Appellee called appellant twice that day, once at 12:00 p.m. and a second time at 6:30 p.m., but appellant did not answer his telephone. After meeting with school administrators, appellee learned that the children had moved to South Carolina.

On March 17, 2010, appellee filed a Motion for Emergency Hearing and for Ex Parte Relief and a Petition for Contempt in the circuit court. The next day, the court issued an ex parte order awarding appellee sole legal and physical custody of the children and permitting her to travel to South Carolina to retrieve the children. Appellee then drove to South Carolina, picked the children up from the schools that they were attending, and drove them back to Maryland.

On April 2, 2010, appellant answered appellee's Motion for Emergency Hearing and for Ex Parte Relief and Petition for Contempt. On April 8, 2010, appellee filed a Motion for Modification of Custody and Child Support. Appellant then filed a Petition to Modify Child Custody, Visitation, and Child Support on April 9, 2010, which requested that the court "[m]odify the Order entered on December 17, 2003" and award appellant "sole legal and physical custody of the minor children of the parties, both *pendente lite* and permanently."

A hearing was held before the circuit court on April 9, 2010. Upon consideration of the testimony and evidence presented at the hearing, the court issued a *pendente lite* order holding

appellant in contempt of the December 17, 2003 custody order. Thereafter, on July 22 and July 27, 2010, the court held a merits hearing on the parties' respective motions for modification of custody and support. The court received evidence from both parties and heard arguments from counsel, as well as argument from Leigh Melton, Esq., the best interest attorney appointed by the court to represent the children.

At the conclusion of the hearing, the court stated:

The first observation is that the move to South Carolina by [appellant] ... was a material change in circumstances since the Order of ... December the 1[7]th, 2003. Now this Court is seriously concerned about how [appellant] went about that move. He did so without telling [appellee], he didn't even tell the boys. He packed them up and move[d] them to South Carolina. He says because of financial reasons, because his significant other obtained a job after being [ ] unsuccessful in getting a job here, took a job in South Carolina. And that may very well be, but the way it was handled was clearly inappropriate and certainly suggests to this Court something about [appellant] that is now rather eviden[t]. [Appellant] wants to have his way and only his way and it's either my way or the highway with [appellant]. Unfortunately, [appellant]'s conduct [ ] violates the Order of December [ ] 17th, 2003. And with a Court Order it is not my way or the highway, it is a[n] Order of this Court that must be obeyed and must be adhered to.... [Appellant] took it upon himself to violate the Order and he's taken it upon himself to move to South Carolina and he's going to have to live with the consequences of that decision.... This Court is convinced that the parents cannot cooperate, that is well demonstrated, amply shown by the behavior of the parents throughout the life of this case. The father is over controlling, he's obsessive about control. He's a bully. Mom, [appellee] is inconsistent in what she does with these children. She lacks discipline. She needs to be a better parent, but primarily both parities [sic] have lost the fine art of communicating with each other over

what's best for these boys, so the essential parenting skill is not here.

In an order filed on August 13, 2010, the court awarded sole legal and primary physical custody of the children to appellee, with visitation for appellant. The order further provided, in relevant part:

**ORDERED,** that except in emergencies, the parties shall communicate through e-mail and any contentious matters or disputed e-mail issues shall be forwarded to the attorney for the minor children, Leigh R. Melton, Esquire, for her review. In the event [appellant] and [appellee] cannot reach a mutual agreement on any disputed matter regarding the minor children within twenty-four (24) hours, then the attorney for the minor children shall serve as the "tie-breaker" and resolve the dispute, it is further

**ORDERED,** that both [appellant] and [appellee] shall be jointly and severally responsible for the payment of all fees and costs incurred by counsel for the minor children, Leigh R. Melton, Esquire, in the resolution of any disputes between them regarding the minor children, as apportioned by counsel for the minor children, it is further

\*      \*      \*

**ORDERED,** that [appellant] shall pay the sum of Five Thousand dollars ($5,000.00) towards [appellee]'s attorney's fees within ninety (90) days of this Order, it is further

**ORDERED,** that [appellant] and [appellee] shall be jointly and severally responsible for the payment of all outstanding fees and costs incurred by the minor children's attorney, Leigh R. Melton, Esquire, in the amount of $5,568.75 ($1,000.00 of which was prepaid in trust and is now released from trust) said balance of fees and costs in the amount of $4,568.75 to be paid within thirty (30) days of the date of this Order[.]

This timely appeal followed. Additional facts will be set forth below as necessary to resolve the questions presented.

## STANDARD OF REVIEW

Our review of the circuit court's judgment is governed by Maryland Rule 8–131(c). As this case was tried without a jury, we "review the case on both the law and the evidence." Rule 8–131(c). We "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Id.*

The clearly erroneous standard does not apply to legal conclusions. *Karsenty v. Schoukroun,* 406 Md. 469, 502, 959 A.2d 1147 (2008). "Where a case involves the application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are 'legally correct' under a de novo standard of review." *Clancy v. King,* 405 Md. 541, 554, 954 A.2d 1092 (2008) (quotations omitted).

## DISCUSSION

### I.

### The Court's Designation of the Best Interest Attorney as a "Tie–Breaker"

On appeal, appellant argues that "[t]he trial court committed legal error by appointing the minor children's Best Interest Attorney as the 'tie-breaker' decision-maker if the parties are not able to reach an agreement." Relying on *In re Mark M.,* 365 Md. 687, 782 A.2d 332 (2001), and *Shapiro v. Shapiro,* 54 Md.App. 477, 458 A.2d 1257, *cert. denied,* 296 Md. 655 (1983), appellant contends that the court "improperly delegated judicial authority to the Best Interest Attorney, a non-judicial person." Thus appellant asserts that "[t]he Court's appointment of the Best Interest Attorney as the 'tie-breaker' . . . should be vacated."

Appellee counters that the court did not err by appointing the best interest attorney as the "tie-breaker." Citing *Meyr v. Meyr,* 195 Md.App. 524, 7 A.3d 125 (2010), appellee claims that, "where the delegation of authority is related to ancillary

matters and the Court retains judicial review of the decisions concerning those issues, it is not improper delegation." Appellee points out that the trial judge in the present matter "granted sole legal and primary physical custody of the minor children to Appellee" and "did not state that the authority of the Best Interest Attorney extended to matters of custody and visitation." Accordingly, appellee contends that there was not an improper delegation of judicial decision-making authority to the best interest attorney. We agree with appellant and explain.

"The question whether a court has improperly delegated judicial authority to a non-judicial person is an issue of law subject to *de novo* review." *Meyr*, 195 Md.App. at 546, 7 A.3d 125. Maryland cases have made clear that a court may not delegate to a non-judicial person decisions regarding child visitation and custody. *See In re Mark M.*, 365 Md. at 704, 782 A.2d 332 ("[A] trial court may not delegate judicial authority to determine the visitation rights of parents to a non-judicial agency or person."); *Shapiro*, 54 Md.App. at 484, 458 A.2d 1257 ("Jurisdiction over custody and visitation, as well as guardianship, legitimation, maintenance and support of children, is vested in the equity courts. There is no authority for the delegation of any portion of such jurisdiction to someone outside the court." (Citation omitted)).

In the case *sub judice,* the court issued an order on August 13, 2010, which stated, *inter alia,* that "[i]n the event [appellant] and [appellee] cannot reach a mutual agreement *on any disputed matter regarding the minor children* within twenty-four (24) hours, then the attorney for the minor children shall serve as the 'tie-breaker' and resolve the dispute." (Emphasis added). The issue we must address is whether the delegation of authority to Melton, a non-judicial person, to resolve "any disputed matter regarding the minor children" was permissible. *Meyr* is instructive in this regard.

In *Meyr*, the trial court awarded the parties, appellee wife and appellant husband, a limited divorce. 195 Md.App. at 541, 7 A.3d 125. The court also issued an Order Regarding

Custody and Visitation, which awarded primary physical custody of the parties' minor children to the appellant, with visitation granted to the appellee. *Id.* The order included a provision authorizing the children's best interest attorney "to coordinate the children's reunification therapy with [the appellee], for as long as she deems said therapy is needed by the family, or until she petitions to the Court to be relieved for said duties." *Id.*

On appeal, this Court rejected the appellant's argument that "the trial court exceeded its authority when it delegated to the best interest attorney the decision of how long family reunification therapy [wa]s to continue." *Id.* at 545, 549, 7 A.3d 125 (quotations omitted). We stated that the trial court, in its Order Regarding Custody and Visitation, "resolved the primary issues relating to custody and visitation, and its delegation of authority to [the best interest attorney] involved merely the coordination of family reunification therapy, *a matter ancillary to custody and visitation.*" *Id.* at 549, 7 A.3d 125 (emphasis added). Additionally, we observed that "[t]he trial court expressly stated that [the best interest attorney]'s authority to oversee the therapy was 'subject to supervision and modification by' the court." *Id.* We therefore concluded that the appellant's claim of error was without merit. *Id.*

Unlike *Meyr,* the court in the case *sub judice* did not limit Melton's decision-making authority to "ancillary" matters. Indeed, the court's August 13, 2010 order delegated broad authority to Melton to resolve "*any* disputed matter regarding the minor children."[2] (Emphasis added). Furthermore, the

---

2. Maryland Code (1984, 2006 Repl.Vol., 2010 Cum.Supp.), § 1–202(a)(1) of the Family Law Article ("F.L."), permits trial courts to "appoint a lawyer who shall serve as a best interest attorney to represent the minor child" in contested child custody and child visitation cases. We note, however, that F.L. § 1–202 does not expressly authorize trial courts to continue the appointment of a best interest attorney following the entry of an order resolving the custody or visitation dispute. Furthermore, the Maryland Rules define and set out the responsibilities of a child's best interest attorney. *See* Maryland Rules, Appendix: Maryland Guidelines for Practice for Court–Appointed Lawyers Representing Children in Cases Involving Child Custody or

court did not indicate that Melton's authority to resolve "any disputed matter regarding the minor children" was subject to the court's review or modification. Thus we conclude that the court erred by delegating judicial authority to Melton, a non-judicial person.[3] Accordingly, we shall vacate that portion of the court's August 13, 2010 order designating Melton as the "tie-breaker."

## II.

### The Parties' Joint and Several Responsibility for the Payment of the Best Interest Attorney's Costs and Fees

◼ Appellant argues that the trial court erred in "holding the parties[ ] jointly and severally liable" for the payment of Melton's outstanding legal fees. According to appellant, making both parties jointly and severally liable for said fees "will serve only to cause more litigation between the parties" and "may lead to animus between a party and the Best Interest Attorney." We disagree.

Preliminarily, we note that appellant's brief does not comply with Maryland Rule 8–504(a)(5), in that it contains no citations to legal authority in support of appellant's argument. *See, e.g., Rollins v. Capital Plaza Assocs., L.P.,* 181 Md.App. 188,

---

Child Access. The Guidelines focus exclusively on the responsibilities of a child's best interest attorney *during the pendency of the custody or visitation action. See id.* at 1.1, 2.1–2.2.

**3.** Effective July 1, 2011, the Court of Appeals adopted a new rule, Rule 9–205.2, entitled Parenting Coordination. Under the rule, the circuit court may appoint a parenting coordinator during the pendency of an action in which the custody of or visitation with a child of the parties is in issue. Rule 9–205.2(f)(*l* ). The court may also appoint a parenting coordinator upon entry of a judgment granting or modifying custody or visitation, *with the consent of the parties and after a hearing.* Rule 9–205.2(f)(2) (emphasis added). In the post-judgment context, a parenting coordinator is authorized by the rule to, *inter alia,* decide disputes by "making minor, temporary modifications to child access provisions ordered by the court," if such decision making is authorized by court order and the parties have agreed to the same in writing or on the record. Rule 9–205.2(g)(9).

201, 955 A.2d 869 (holding that the appellant's brief violated Rule 8–504(a)(5) because it did not contain citations to legal authority in support of her position), *cert. denied,* 406 Md. 746, 962 A.2d 372 (2008); *Kramer v. Mayor of Baltimore,* 124 Md.App. 616, 633–34 n. 4, 723 A.2d 529 (refusing to address the appellant's contention because the appellant violated Rule 8–504(a)(5) by failing to support his contention with citation to legal authority and argument), *cert. denied,* 354 Md. 114, 729 A.2d 405 (1999). Notwithstanding this violation, we shall exercise our discretion to address the merits of appellant's argument.

Maryland Code (1984, 2006 Repl.Vol., 2010 Cum.Supp.), § 1–202(a)(1) of the Family Law Article ("F.L."), states that, "[i]n an action in which custody[ ] [or] visitation rights ... [are] contested, the court may ... appoint a lawyer who shall serve as a best interest attorney to represent the minor child." Subsection (a)(2) of the statute provides that "the court *may* ... impose counsel fees against one or more parties to the action." (Emphasis added). Thus the statute expressly provides that the court may, in its discretion, impose attorney's fees against either or both parties as is just and proper under the circumstances. This discretion, in our view, necessarily includes the authority to decide the manner in which the attorney's fees are to be paid.

In the instant case, the court's August 13, 2010 order stated "that [appellant] and [appellee] [were] jointly and severally responsible for the payment of all outstanding fees and costs incurred by the minor children's attorney." In its oral opinion rendered at the conclusion of the merits hearing on July 27, 2010, the court stated:

> The parties will also pay equally all attorney's fees that are due Mrs. Melton and that obligation will be joint and several. That means that Mrs. Melton can seek payment in full from one party and the other party will have to get it out of the other party. In other words that obligation is joint and several. I want Mrs. Melton paid.

Given the discretion accorded by F.L. § 1–202(a)(2) and the above rationale, we see no error or abuse of discretion by the trial court in imposing joint and several liability on the parties for Melton's outstanding fees.

## III.

### The Best Interest Attorney's Authority to Apportion her Legal Fees in Future Disputes

Appellant argues that the trial court erred "by ordering that the Best Interest Attorney make the determination on how to apportion her legal fees between the parties for future disputes." Appellant claims that F.L. § 1–202(a)(2) "does not provide that [a] court may appoint a third party, a non-judicial person, to impose, and apportion, those fees." Because we are vacating that portion of the court's August 13, 2010 order designating Melton as the "tie-breaker," Melton will not actually incur any future costs or fees in that capacity. Accordingly, the issue of whether the court erred by delegating the authority to the minor children's best interest attorney to decide the apportionment of her legal fees between the parties for resolving future disputes is moot.

## IV.

### Award of Appellee's Attorney's Fees

Finally, appellant argues that the trial court "err[ed] by awarding attorney's fees pursuant to [F.L.] § 9–105 and [F.L.] § 12–103 because it failed to consider the statutory criteria." Specifically, appellant claims that the court "failed to consider that Appellee had not exercised Thursday night visitation for years prior to the children's move to South Carolina, and that, therefore, Appellee would not be losing visitation." Appellant further contends that the court "made no findings as to the financial status of either party, the needs of each party, or whether there was substantial justification for bringing, maintaining or defending the proceeding." Lastly, appellant asserts that the court "could not find that there was [an] unjustifiable denial or interference with Appellee's

visitation with the minor children," because appellant "testi-
fied that the children would be returned to Maryland for their
alternate weekend visitation with Appellee."

In response, appellee argues that the trial court considered
each of the statutory criteria set forth in F.L. § 12–103(b).
Appellee contends that the court "took into consideration the
financial situation of each party as well as their financial needs
in his ruling on Custody as well as Attorney's Fees." Appellee
points to the court having "in evidence exhibits related to the
financial resources of the parties, as well as testimony from
each party on their finances." Additionally, appellee asserts
that the court considered "Appellee's substantial justification
in brin[g]ing the action in order to obtain Appellant's compli-
ance with [the Custody] Order."

Alternatively, appellee contends that the trial court "had the
authority to assess costs or counsel fees" against appellant
under F.L. § 9–105. Appellee asserts that appellant, "[i]n
violating the Court Order and moving the children to South
Carolina, 8 to 10 hours away," "unjustifiably infringed" upon
appellee's visitation rights. We agree with appellee and ex-
plain.

As previously noted, the court's August 13, 2010 order
stated "that [appellant] shall pay the sum of Five Thousand
dollars ($5,000.00) towards [appellee]'s attorney's fees within
ninety (90) days of this Order[.]" "The award of counsel fees
is reviewed under the abuse of discretion standard. A circuit
court's decision in this regard will not be reversed unless a
court's discretion was exercised arbitrarily or the judgment
was clearly wrong." *Meyr*, 195 Md.App. at 552, 7 A.3d 125
(citations and quotations omitted). "Although the general rule
is that 'each party is responsible for its own legal fees,' a court
may order one party to pay the other party's attorney's fees
pursuant to statute or by an express agreement." *Id.*

One statute that permits the court, within its discretion, to
award attorney's fees is F.L. § 9–105, which states, in relevant
part:

In any custody or visitation proceeding, if the court determines that a party to a custody or visitation order has unjustifiably denied or interfered with visitation granted by a custody or visitation order, the court may . . . take any or all of the following actions:

*     *     *

(3) assess costs or counsel fees against the party who has unjustifiably denied or interfered with visitation rights.

In the case *sub judice*, the circuit court, in a *pendente lite* order filed on April 14, 2010, held appellant in contempt of the December 17, 2003 custody order. At the conclusion of the July 27, 2010 hearing, the court specifically found that appellant's conduct in moving the minor children to South Carolina "violate[d] the [Custody] Order of December [ ] 17th, 2003" and constituted "a material change in circumstances since the Order of . . . December [ ] 1[7]th, 2003." The court also stated that it was "seriously concerned about how [appellant] went about that move," because "[h]e did so without telling [appellee], he didn't even tell the boys. He packed them up and move[d] them to South Carolina."

Moreover, the court stated that it was "not persuaded by [appellant]'s explanation that he thought that the [December 17, 2003] Order . . . permitted him because he had primary physical custody to do whatever he wanted to." According to the court, appellant "had the benefit of legal counsel," and therefore the court "d[id] not believe [that appellant] did not understand what that Order meant."

In our view, by moving the children to South Carolina without notifying appellee, appellant clearly interfered with appellee's visitation rights. The fact that appellee did not exercise her right to visitation on Thursday evenings under the December 17, 2003 order does not mean, as appellant argues, that his actions did not interfere with appellee's visitation granted by such order. Appellant's clandestine removal of the children from Maryland to South Carolina deprived appellee of her *right* to visitation with the children every Thursday evening.

Furthermore, appellant's interference was unjustifiable, as indicated by the court's finding of contempt and its determination that appellee violated the December 17, 2003 custody order. Although the court did not specifically discuss the statutory requirements under F.L. § 9–105 in awarding appellee's attorney's fees, the court's oral opinion set forth its findings regarding appellant's unjustifiable interference with appellee's visitation rights. *See Meyr,* 195 Md.App. at 553–54, 7 A.3d 125 (holding that the trial court did not err in failing to "specifically recite the statutory factors in its award of attorney's fees," because the court's memorandum opinion demonstrated that it had considered the factors). Therefore, we conclude that the court did not abuse its discretion in awarding attorney's fees against appellant under F.L. § 9–105.

Because we have determined that the court's award of appellee's attorney's fees was appropriate under F.L. § 9–105, we need not address the parties' arguments concerning whether the court's award of the same attorney's fees was proper under F.L. § 12–103.

**JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY AFFIRMED IN PART AND VACATED IN PART; CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID 50% BY APPELLANT AND 50% BY APPELLEE.**