*Cherlie Augustin v. David Duncan, et al.*, No. 1566, Sept. Term, 2025, and No. 22, Sept. Term, 2026.  Opinion by Arthur, J.

**CHILD CUSTODY—NONPARENTAL CUSTODY & VISITATION—PLEADING**

Generally, a nonparent must plead certain allegations—that the parents are unfit or that exceptional circumstances are present, or that the nonparent is a de facto parent by way of both parents' consent—in order to obtain custody or visitation over the objections of a biological or adoptive parent.  This presumption favoring parental custody exists because the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

In a custody and visitation dispute in which both of the child's parents are deceased, neither party has the status of a biological or adoptive parent and the presumption does not apply.

Where the court has given temporary custody to non-parental caregivers pending a final determination regarding custody and visitation, a biological relative or other third party need not plead the allegations required to overcome the parental presumption in order to assert a legally viable claim.

The court erred in disposing of the relative's pleading on the premise that she had failed to allege that the nonparental court-appointed caregivers were unfit or that exceptional circumstances were present, or that the relative was a de facto parent by consent of the child's parents.

**NONPARENTAL CUSTODY & VISITATION—BEST INTERESTS OF THE CHILD**

On remand, the court is to resolve the dispute by considering the best interests of the child.  In considering the best interests of the child, the court should look to the statutory factors that apply in disputes between parents and should modify them as necessary to fit the unusual facts of this case.

Circuit Court for Frederick County
Case No. C-10-FM-24-001610

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1566
September Term, 2025

No. 22
September Term, 2026

_____

CONSOLIDATED CASES

_____

CHERLIE AUGUSTIN

v.

DAVID DUNCAN, ET AL.

_____

Arthur,
Friedman,
Getty, Joseph M.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed: May 5, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This is an unusual case that involves competing claims for custody and access to a very young child whose parents are dead.

In an emergency order, entered on an ex parte basis, the Circuit Court for Frederick County gave custody, temporarily, to the parents of a friend of the deceased mother. The child's parental aunt, who had received no notice of the ex parte order, intervened and sought visitation and, later, custody. At the behest of the court-appointed caregivers, the circuit court dismissed the aunt's pleading, apparently because it did not contain the allegations necessary for a nonparent to obtain custody or visitation over the objections of a biological or adoptive parent. In addition, the court ordered the aunt to pay a portion of the fees billed by the best interest attorney ("BIA") for the child and his half-siblings.

The child's aunt appealed. We reverse the order dismissing her pleading but affirm the order requiring her to pay a portion of the BIA's fees.

## BACKGROUND

On August 25, 2024, Crimea Baker and Sean Lange were killed in their house in Frederick County. Crimea Baker's former husband, David Turner, has been charged with murdering her and Mr. Lange.

At the time of the killings, four children were living with Ms. Baker and Mr. Lange. Ms. Baker was the mother of all four. David Turner was the father of three of the children, who ranged in age from nine to almost twelve. Mr. Lange was the father of the fourth—C., who was just seven months old at the time of his parents' death. This case principally concerns the custody of C.

On August 26, 2024, the day after the killings, the Frederick County Sheriff placed all four of the children with Ms. Baker's close friend, Jennifer Duncan, and Ms. Duncan's partner, Justin Gore.

On August 29, 2024, David Turner's mother, Cathy Ann Johnson, filed a form complaint for custody in the Circuit Court for Frederick County. As defendants, Ms. Johnson named David Turner and Crimea Baker (though her complaint noted that Ms. Baker was "deceased"). Ms. Johnson requested that she and Mr. Turner be awarded custody of the three older children (Ms. Johnson's grandchildren). Her complaint did not address who would have custody of C.

On that same day, August 29, 2024, Crimea Baker's mother, Patricia Baker, filed a complaint in which she requested custody of all four children (all of whom were her grandchildren). As the sole defendant, Ms. Baker named David Turner.

Also on August 29, 2024, Jennifer Duncan's parents, Valerie and David Duncan, filed a complaint for custody of the three older children. We shall refer to Valerie and David Duncan as "the Duncans."

As defendants, the Duncans named their daughter, Jennifer; her partner, Mr. Gore; and David Turner. The Duncans' complaint did not request custody of C.

On August 30, 2024, the Circuit Court for Frederick County entered an ex parte, emergency order in which it granted temporary custody of all four children to Jennifer Duncan and her parents, the Duncans. In the same order, the court consolidated the case brought by Ms. Johnson, the case brought by Patricia Baker, and the case brought by the

2

Duncans. The court designated the case brought by Ms. Johnson as the "lead case" but did not otherwise align the parties as plaintiffs, defendants, etc.

On September 5, 2024, the court appointed a BIA for the three older children. In what may have been an oversight, the order appointing the BIA did not mention C. During the pendency of these proceedings, however, the BIA has advocated for C.'s interests without objection from any party.

On October 13, 2024, four parties moved to intervene. They were: Mr. Lange's adoptive parents, Stephen and Laura Lange; Mr. Lange's sister, Cherlie Augustin; and Mr. Lange's ex-wife, Teela Lange, who had three children with Mr. Lange and thus is the mother of three of C.'s half-siblings. All four of the intervenors were represented by the same attorney.[1]

In accordance with Maryland Rule 2-214(c), the motion to intervene was accompanied by a proposed complaint. The proposed complaint requested visitation but did not request custody.

While the motion to intervene was pending, Patricia Baker, the children's maternal grandmother, filed a pleading in which she questioned whether Sean Lange was C.'s father. She asked for genetic testing to determine whether C. was Mr. Lange's child. The BIA supported the request for genetic testing.

---

[1] The Duncans assert that the intervenors did not move to intervene until "[n]early three months" after the court entered the ex parte, temporary order. They are incorrect. The intervenors moved to intervene 44 days, or just over six weeks, after the court entered the ex parte order. Ms. Augustin, C.'s paternal aunt, asserts that she did not have notice of the hearing at which the court entered the ex parte order.

On November 18, 2024, the court ordered that "if Sean Lange is determined to be the father of [C.] after paternity testing, then the Motion to Intervene shall be granted at that time." The order did not specify whether the court would enter another order formally granting the motion to intervene or whether the motion would be deemed to have been granted, without further action by the court, if Mr. Lange's paternity were confirmed.

On December 19, 2024, the Duncans filed what they called a counterclaim.[2] The counterclaim contained specific allegations explaining why the Duncans, and not Mr. Turner, Ms. Johnson, Ms. Patricia Baker, or any of the intervenors, should have custody of the children, including C. The counterclaim requested that the court establish a legal and custody arrangement in the best interests of the children and establish a schedule for access for the noncustodial parties.

On March 31, 2025, the intervenors informed the court that Sean Lange's paternity of C. had been confirmed. Although the court did not enter a separate order granting the motion to intervene, the parties began to act as though the intervenors were now parties to the case. The intervenors did not, however, answer the counterclaim filed by the Duncans.

---

[2] The Duncans had previously filed a complaint in a separate action that was consolidated with the actions brought by Ms. Johnson (the paternal grandmother of three of the children) and by Ms. Patricia Baker (the maternal grandmother of all four of the children). Consequently, the counterclaim is more aptly characterized as an amended pleading of some sort.

On May 7, 2025, Teela Lange, Sean Lange's ex-wife, secured new counsel. As a result, she was no longer represented by the attorney for the three remaining intervenors.

On May 9, 2025, the attorneys for Ms. Johnson, the grandmother of the three older children, moved to withdraw their appearances. On May 13, 2025, the attorney for the three remaining intervenors moved to withdraw her appearance.

On May 14, 2025, Sean Lange's adoptive parents, Stephen and Laura Lange, moved to "withdraw" as intervenors.

On May 21, 2025, the Duncans filed what they called a motion for appropriate relief. The motion asserted that the intervenors had failed to file and serve a complaint. The motion also asserted that the intervenors were in default because they had not answered the counterclaim filed by the Duncans. By way of relief, the motion requested that the court dismiss the intervenors from the case.

On May 26, 2025, Cherlie Augustin and Stephen and Laura Lange responded to the motion for appropriate relief. They argued that they had been awaiting a formal order granting their motion to intervene; that they had attached a proposed complaint to the motion to intervene, but that they no longer agreed on the relief requested; and that they had no obligation to answer the counterclaim because the court had not yet designated them as plaintiffs or defendants, as required by Maryland Rule 2-214(c).

On May 28, 2025, Ms. Augustin filed a motion for visitation, in which she requested an order allowing her to have access to C.

In an order dated June 2, 2025, the court allowed the attorneys for Ms. Johnson, the paternal grandmother of the three oldest children, to withdraw. In an order dated June

5

3, 2025, the court allowed the attorney for the three remaining intervenors to withdraw. In an order dated June 4, 2025, the court "struck" Stephen and Laura Lange as parties.[3]

On July 11, 2025, the court convened a hearing. Ms. Augustin appeared, through a new attorney. At the hearing, the court ordered the two remaining intervenors—Ms. Augustin and Teela Lange—to answer the counterclaim within seven days. Both of the intervenors answered the counterclaim on July 18, 2025.

On July 24, 2025, Ms. Augustin filed what she called a "complaint for custody."[4] The complaint requested sole legal and physical custody of C. or, in the alternative, liberal visitation rights.

On August 8, 2025, the Duncans filed a second motion for appropriate relief, in which they asked the court either to dismiss the claims asserted by Ms. Augustin and Ms. Teela Lange or to enter summary judgment against them. In the motion, the Duncans began with the premise that they stood in the position of a biological or adoptive parent because they had custody of C. under the temporary, ex parte order of August 30, 2024. Proceeding from that premise, they argued that Ms. Augustin and Ms. Lange could assert a right to custody or visitation only if they pleaded what a third party must plead in order to obtain custody or visitation over the objections of a biological or adoptive parent—i.e., that the parents are unfit or that exceptional circumstances are present (*see, e.g., Burak v.*

_____

[3] A more appropriate course of action would have been to dismiss the Langes' claims.

[4] Because Ms. Augustin and the other intervenors had attached a different complaint requesting different relief to their motion to intervene, the "complaint for custody" was arguably Ms. Augustin's amended complaint.

6

*Burak*, 455 Md. 564 (2017); *Ross v. Hoffman*, 280 Md. 172 (1977)) or that the third parties are de facto parents because both parents have consented to a parent-like relationship between them and C. *See, e.g.*, *E.N. v. T.R.*, 474 Md. 346 (2021); *Conover v. Conover*, 450 Md. 51 (2016). Because the pleadings filed by Ms. Augustin and Ms. Lange did not contain those allegations, the Duncans concluded that the court should dismiss them from the case.

On September 15, 2025, the circuit court granted the second motion for appropriate relief. In its order the court wrote that it had "dismissed" Ms. Augustin and Ms. Teela Lange "as parties to the action for failure to file any proper pleading for custody."

While the second motion for appropriate relief was pending, Teela Lange moved to "withdraw" from the case. On the day on which it granted the second motion for appropriate relief, the court also granted the motion to "withdraw."[5]

On September 17, 2025, the court granted the BIA's interim petition for attorneys' fees. Of the more than $29,000.00 in fees that the BIA had billed through April 30, 2025, the court required Ms. Augustin to pay $1,988.16 plus an additional retainer of $2,000.00. Under the order, Ms. Augustin was obligated to pay essentially the same

---

[5] As with the motion to "withdraw" filed by Stephen and Laura Lange, the more appropriate course of action would have been to dismiss Ms. Lange's claims.

amount as the other active parties in the case—the Duncans; Teela Lange; and Jennifer Duncan and Justin Gore.[6]

On September 22, 2025, Ms. Augustin noted an interlocutory appeal to this Court.

On September 27, 2025, Ms. Augustin moved for reconsideration of the order requiring her to pay a portion of the BIA's fees. On October 23, 2025, the court denied the motion for reconsideration. On October 30, 2025, Ms. Augustin noted a second interlocutory appeal. The first and second appeals are designated as ACM-REG-1566-2025.

In their appellate brief in ACM-REG-1566-2025, the Duncans included a motion to dismiss the appeal. The motion turned, in part, on the novel question of whether a paternal aunt is a "natural guardian" who may take an interlocutory appeal of an order depriving her of the care and custody of a child. Maryland Code (1974, 2020 Repl. Vol.), § 12-303(3)(x) of the Courts and Judicial Proceedings Article.[7]

While the interlocutory appeal in ACM-REG-1566-2025 was pending, the proceedings continued in the circuit court. On February 18, 2026, the court entered a final judgment, in which it granted sole legal and physical custody of all four of the children, including C., to the Duncans.

---

[6] The order required the Duncans to pay $1,988.17 plus an additional retainer of $2,000.00. Similarly, the order required Teela Lange to pay $1,988.17 plus an additional retainer of $2,000.00. By its terms, however, the order required Jennifer Duncan and Justin Gore to pay only $1,888.16 plus an additional retainer of $2,000.00.

[7] *See Sudler v. Sudler*, 121 Md. 46, 52-53 (1913) (considering, but not deciding, whether an uncle was the "natural guardian" of an orphaned child and was thus capable of changing the child's domicile).

On Friday, February 27, 2026, four business days before the scheduled date for oral argument in ACM-REG-1566-2025, the Duncans moved to dismiss the appeal on the ground that it was moot because of the final judgment.

On the following Monday, March 2, 2026, this Court ordered Ms. Augustin to inform us whether she had appealed or planned to appeal from the final judgment. On the assumption that Ms. Augustin either had appealed or would appeal, we ordered all parties to address whether the appeals should be consolidated and whether the parties required further briefing. We ordered the parties to respond by the close of business on the following day, Tuesday, March 3, 2026.

In her response, Ms. Augustin informed us that she had noted an appeal from the final judgment (ACM-REG-0022-2026), that she believed that the appeals should be consolidated, and that she did not require further briefing. The Duncans opposed consolidation and asserted a need for further briefing.

After hearing oral argument on Thursday, March 5, 2026, we entered an order consolidating the two appeals and permitting (but not requiring) the parties to file additional briefs. Because the central issue in the interlocutory appeal is identical to the central issue in the appeal from the final judgment—did the court err in disposing of Ms. Augustin's pleading?—we limited the briefs to 3,900 words, the amount permitted in reply briefs.

On March 20, 2026, the Duncans filed a supplemental brief. The supplemental brief largely reiterates one of the arguments contained in the Duncans' opening brief.

9

In the brief in her interlocutory appeal in ACM-REG-1566-2025, Ms. Augustin raised the following questions, which we quote:

1.  Did the Trial Court err in dismissing Appellant as an Intervenor in the child custody action?

2.  Did the Trial Court err in dismissing Appellant's custody claims for failure to file a "proper pleading," despite appellant's compliance with the trial courts filing directives?

3.  Did the Trial Court err in finding Appellant responsible for the ordered portion of attorney's fees?

For the reasons stated herein, we shall dismiss the interlocutory appeal in ACM-REG-1566-2025 because it is moot. In the appeal from the final judgment (ACM-REG-0022-2026), we shall reverse the order dismissing Ms. Augustin from the case but affirm the award of the BIA's fees. We shall remand the case for further consideration of the issues of custody and visitation.

## DISCUSSION

### A. The Motions to Dismiss the Interlocutory Appeal

The Duncans moved to dismiss the interlocutory appeal in ACM-REG-1566-2025 on several grounds, including the ground that it was moot. We agree that the interlocutory appeal became moot when the circuit court entered a final judgment on February 18, 2026.

"Generally, a case is moot . . . 'when the court can no longer fashion an effective remedy.'" *D.L. v. Sheppard Pratt Health Sys., Inc.*, 465 Md. 339, 351-52 (2019) (quoting *In re Kaela C.*, 394 Md. 432, 452 (2006)). The interlocutory appeal is moot because the

final judgment of February 18, 2026, has superseded the interlocutory orders from which Ms. Augustin appealed. An order reversing the interlocutory orders would have no effect, because those orders no longer control the parties' rights and obligations. Instead, those interlocutory orders have been subsumed into the final judgment, which controls.

Because the target on appeal is now the final judgment, we dismiss the interlocutory appeal in ACM-REG-1566-2025. Under Maryland Rule 8-131(d), however, the interlocutory orders previously entered in the action are open to review in ACM-REG-0022-2026, Ms. Augustin's appeal from the final judgment.

### B. The Motion for Appropriate Relief

We turn to the substance of the appeal: whether the circuit court erred in dismissing Ms. Augustin from the case.

To answer that question, we must first ascertain what relief the court granted when it granted the second motion for "appropriate" relief. Did it grant a motion to dismiss? Did it grant a motion for summary judgment? Did it do something else?

The second motion for appropriate relief asked the court to dismiss Ms. Augustin's complaint or, "in the alternative," to grant summary judgment. The motion, however, repeatedly cited matters outside the four corners of the pleading that it asked the court to dismiss.

"If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2-501[.]" Md. Rule 2-322(c); *accord D'Aoust v. Diamond*, 424 Md.

11

549, 572-73 (2012). In deciding the motion, therefore, the circuit court granted a motion for summary judgment.

Maryland Rule 2-501(f) permits a court to grant a motion for summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." The issue of whether a trial court properly granted summary judgment is a question of law. *Butler v. S & S P'ship*, 435 Md. 635, 665 (2013) (citing *D'Aoust v. Diamond*, 424 Md. at 574); *accord GPL Enterprise, LLC v. Certain Underwriters at Lloyds*, 254 Md. App. 638, 650 (2022).

In an appeal from the grant of summary judgment, this Court conducts a *de novo* review to determine whether the circuit court's conclusions were legally correct. *D'Aoust v. Diamond*, 424 Md. at 574; *accord GPL Enterprise, LLC v. Certain Underwriters at Lloyds*, 254 Md. App. at 650.[8] In general, a Maryland appellate court will affirm the grant of summary judgment only on the grounds on which the circuit court relied. *See, e.g., Selective Way Ins. Co. v. Fireman's Fund Ins. Co.*, 257 Md. App. 1, 34 (2023).

The Duncans argue, first, that Ms. Augustin's complaint "materially departs" from the complaint that she (and three others) attached to the motion to intervene. Although Maryland Rule 2-341 permits parties to amend pleadings, the Duncans assert, without

---

[8] The Duncans incorrectly describe the dismissal of Ms. Augustin's complaint as a discretionary decision. Even if the court had granted a motion to dismiss for failure to state a claim, we would review the decision "without deference, to determine whether it was legally correct." *See, e.g.*, *Barclay v. Castruccio*, 469 Md. 368, 373 (2020).

citation to authority, that "a permissive intervenor granted access to a case on the basis of, inter alia, their proposed pleading, cannot file a wholly different pleading after intervening." The Duncans did not make this argument in the circuit court. Consequently, it is not before us on appeal from the grant of summary judgment. Even if it were before us, however, we would reject it.

In arguing that Ms. Augustin was prohibited from filing her complaint, the Duncans note that, in the proposed complaint that accompanied the motion to intervene, Ms. Augustin (and Teela Lange, and Stephen and Laura Lange) requested visitation but did not request custody. They also note that in May 2025 Ms. Augustin filed a motion for visitation. By contrast, in the later complaint, which Ms. Augustin filed after differences had developed between her and her follow intervenors and she had engaged counsel of her own, Ms. Augustin requested both custody and visitation. This "material depart[ure]," the Duncans say, "justif[ies]" the dismissal of her complaint.[9]

The Duncans' contention has no basis in Maryland law. Because of the many procedural irregularities that plague the record in this case, it is not at all clear whether the circuit court ever actually accepted the complaint that accompanied the motion to intervene. Even if the court did accept that complaint, however, Ms. Augustin's subsequent complaint would operate as an amendment. The original complaint was a joint project—a compromise that expressed the interests of the four intervenors, all of

---

[9] The Duncans do not explain why the new allegations required the dismissal of the entire complaint, including the portions in which Ms. Augustin merely reasserted her previous request for access or visitation.

13

whom were represented by the same attorney. Ms. Augustin had every right to reevaluate and restate her claims in an amended pleading after differences had developed among the intervenors and she had obtained counsel of her own.

Under Maryland Rule 2-341(a), "[a] party may file an amendment to a pleading without leave of court by the date set forth in a scheduling order or, if there is no scheduling order, no later than 30 days before a scheduled trial date." When Ms. Augustin filed her complaint, the trial was far more than 30 days in the future. Nor had the court issued a scheduling order that prohibited the amendment. In the circumstances of this case, therefore, Ms. Augustin was entitled to amend her pleading without leave of court.

Under Rule 2-341(a), "[w]ithin 15 days after service of an amendment, any other party to the action may file a motion to strike setting forth reasons why the court should not allow the amendment." The Duncans do not claim to have moved to strike Ms. Augustin's complaint. Even if they did, we doubt that the court could properly have stricken the complaint merely because Ms. Augustin requested relief that she had not requested when she was represented by the attorney who also represented her three fellow intervenors. "Amendments shall be freely allowed when justice so permits." Md. Rule 2-341(c). "The policy that favors amendments reflects the liberal spirit of the modern rules." *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. L.P.*, 109 Md. App. 217, 248 (1996). "Amendments are allowed 'so that cases will be tried on their

14

merits rather than upon the niceties of pleading[.]'" *Id.* (quoting *Crowe v. Houseworth,* 272 Md. 481, 485 (1974)).[10]

Citing *Burak v. Burak*, 455 Md. at 624, the Duncans also argue that, when third parties (such as Ms. Augustin) seek custody, they "must allege specific facts to establish standing and parental unfitness or exceptional circumstances sufficient to overcome the constitutional preference for parental care and 'detailed factual allegations in [their] pleading that, if true, would support a finding that . . . the best interests of the child would be served in the custody of the third party.'"[11]

The Duncans proceed to cite the nonexhaustive list of factors that bear on the existence of "exceptional circumstances." Those factors "include":

> "the [1] length of time the child has been away from the biological parent, [2] the age of the child when care was assumed by the third party, [3] the possible emotional effect on the child of a change of custody, [4] the period of time which elapsed before the parent sought to reclaim the child, [5] the nature and strength of the ties between the child and the third party custodian, [6] the intensity and genuineness of the parent's desire to have the child, [7] the stability and certainty as to the child's future in the custody of the parent."

---

[10] The Duncans suggest that Ms. Augustin should have sought what they call "preapproval" to amend a pleading. The Maryland Rules impose no such obligation.

[11] Without the ellipsis, the passage in *Burak* reads as follows: "Specifically, a third-party seeking to intervene in a custody dispute must include detailed factual allegations in his or her pleading that, if true, would support a finding that both *biological parents* are either unfit or that exceptional circumstances exist and that the best interests of the child would be served in the custody of the third-party." *Burak v. Burak*, 455 Md. at 623-24 (emphasis added). The Duncans employed the ellipsis to omit the language that ties *Burak*'s holding to disputes with "biological parents."

*McDermott v. Dougherty*, 385 Md. 320, 419 (2005) (quoting *Ross v. Hoffman*, 280 Md. at 191).

The Duncans assert that Ms. Augustin's complaint did not include "specific factual allegations to establish exceptional circumstances." On that basis, they conclude that the court correctly dismissed the complaint.

The Duncans fail to recognize that proof of exceptional circumstances is required in custody disputes between a third party and a "biological parent." *Burak v. Burak*, 455 Md. at 624; *McDermott v. Dougherty*, 385 Md. at 419; *Ross v. Hoffman*, 280 Md. at 191. The Duncans, however, are not C.'s biological parents. Nor are they C.'s adoptive parents. Their claim to custody derives not from their status as parents, but from a temporary, emergency order that the circuit court entered on an ex parte basis without notice to Ms. Augustin. Where, as in this case, the temporary custodian is someone other than a biological or an adoptive parent, the issue of "exceptional circumstances" is beside the point.

"[T]he presumption favoring parental custody exists because 'the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.'" *Burak v. Burak*, 455 Md. at 624 (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000)). In a dispute between parties who are not the child's parents, the presumption does not apply. In endorsing the Duncans' argument that Ms. Augustin failed to file a "proper pleading" because she failed to allege the existence of "exceptional circumstances," the circuit court erred.

16

The Duncans contend that it would "upend Maryland custodial law" if Ms. Augustin were permitted to pursue her claims for custody and visitation. We are unpersuaded.

Most frequently, a custody dispute will involve a dispute between the child's parents. Less frequently, a custody dispute may involve a dispute between a third party and one or more of the child's parents, as, for example, when the child's grandparents claim that the parents are unfit or that exceptional circumstances are present (*see, e.g.*, *Burak v. Burak*, 455 Md. at 626); or when a third party claims to have acquired the status of a de facto parent, in part because the biological or adoptive parents consented to, and fostered, the formation and establishment of a parent-like relationship with the child. *See E.N. v. T.R.*, 474 Md. at 376.

This case does not fall into any of those categories. C.'s parents are dead. Consequently, this is not a dispute between C.'s parents themselves or between C.'s parents and a third party. Instead, this is a dispute between people who are not C.'s parents, but who assert a right to custody and to visitation. "'[T]he fundamental right of parents to make decisions concerning the care, custody, and control of their children'" (*Burak v. Burak*, 455 Md. at 624 (quoting *Troxel v. Granville*, 530 U.S. at 66)) has no role here.[12]

---

[12] *Cf. In re Brown*, 105 P.3d 991 (Wash. 2005) (where the parents had left the child in the care of the grandmother, and another relative sought custody, the grandmother was not entitled to the same presumption of fitness as the parents, the dispute did not implicate the fundamental rights of parents, and the applicable standard was the child's best interests).

17

Although other states have devised mechanisms for determining custody when a child's parents are dead,[13] Maryland has not. The issue is unprecedented in Maryland law. The ordinary template does not apply.

Nonetheless, in resolving the issue of custody and visitation in this case, as in all cases, the best interests of the child will be "'of transcendent importance.'" *A.A. v. Ab.D.*, 246 Md. App. 418, 441 (2020) (quoting *Ross v. Hoffman*, 280 Md. at 174-75). In evaluating issues of custody and visitation on remand, the court should consider the statutory factors that apply in all cases pertaining to child custody. *See* Maryland Code, § 9-201 of the Family Law ("FL") Article (1984, 2019 Repl. Vol., 2025 Supp.). The court should modify those factors, as necessary, where they refer to C.'s "parents," as opposed to his court-appointed caregivers or his paternal aunt. The final factor, as always, is "any other factor that the court considers appropriate in determining how best to serve the physical, developmental, and emotional needs of the child." FL § 9-201(a)(16).

Because C. has lived with the Duncans for almost of all his life, and because he has almost certainly developed bonds with his half-siblings who live with the Duncans as well, it is entirely conceivable that the court, on remand, will reach the same conclusion that it previously reached, or one that is quite similar. As the child's nearest living

___

[13] Texas has enacted a statute that allows a "relative of the child within the fourth degree of consanguinity" to file certain suits for access to a minor child if both parents are deceased. Tex. Fam. Code § 10-102.003(a)(a)(12); *see In re M.G.G.*, 673 S.W.3d 363, 368 (Ct. App. Tex. 2023). Illinois has enacted a statute that requires courts to grant visitation rights to grandparents under certain circumstances and allows a court to grant visitation rights to other relatives when both of the child's parents are deceased. 755 Ill. Comp. Stat. 5/11-7.1.

relative, however, Ms. Augustin must have the opportunity to participate in the proceedings on which the court will base its decision and to make her case for custody or, at least, for access or visitation.

### C. The BIA's Fees

On September 17, 2025, the circuit court entered an order pertaining to the BIA's interim request for attorneys' fees. The ordered divided the fees almost evenly between each of the remaining parties—the Duncans; Ms. Augustin; Teela Lange; and Jennifer Duncan and Justin Gore. Ms. Augustin challenges the even division of the fees.

Section 1-202(a)(1)(ii) of the Family Law Article empowers a circuit court to "appoint a lawyer who shall serve as a best interest attorney to represent the minor child" in "an action in which custody, visitation rights, or the amount of support of a minor child is contested[.]" Section 1-202(a)(2) empowers a circuit court to "impose counsel fees against one or more parties to the action." "Thus the statute expressly provides that the court may, in its discretion, impose attorney's fees against either or both parties as is just and proper under the circumstances." *Van Schaik v. Van Schaik*, 200 Md. App. 126, 137 (2011). The court's discretion "necessarily includes the authority to decide the manner in which the attorney's fees are to be paid." *Id.*

We review the circuit court's decision for abuse of discretion. *See id.* at 137-38. "Under that lenient standard, the ruling 'will not be reversed simply because the appellate court would not have made the same ruling.'" *McAllister v. McAllister*, 218 Md. App. 386, 400 (2014) (quoting *North v. North*, 102 Md. App. 1, 14 (1994)). "Instead, '[t]he decision under consideration has to be well removed from any center mark imagined by

19

the reviewing court and beyond the fringe of what that court deems minimally acceptable.'" *Id.* (quoting *North v. North*, 102 Md. App. at 14).

Ms. Augustin agrees that the court imposed an "equal share" of the fees on each of the parties. She contends, however, that it was "inequitable" to require her to pay an equal share of the BIA's fees, because the court had just dismissed her from the case. She also contends that the BIA's fees pertained to the representation of all four children, but that she has asserted claims only as to one. She complains that her interaction with the BIA consisted of "a single brief meeting."[14]

The court did not abuse its discretion in allocating the fees as it did. The BIA must advocate for C.'s interests as long as Ms. Augustin pursues a claim for custody or visitation, which she continues to do to this day; the court did not absolve Ms. Augustin of the obligation to pay a portion of the BIA's fees when the court dismissed Ms. Augustin from the case. The court certainly could have exercised its discretion to reduce Ms. Augustin's obligation in relation to the others, as her claims, unlike theirs, concern only one of the four children. The court, however, had no obligation to do so. An equal division of the fees was a sound and practical solution, particularly given the relatively small amounts involved and the likely costs in time and money of drawing and enforcing even finer distinctions.

**MOTION TO DISMSS ACM-REG-1566-2025 AS MOOT, GRANTED. IN ACM-REG-0022-2026, JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK**

---

[14] Ms. Augustin does not argue that the order appointing the BIA refers only to C.'s half-siblings and not to C. himself. Consequently, we do not consider that argument.

**COUNTY AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. THREE-FOURTHS OF THE COSTS TO BE PAID BY APPELLEES; ONE-FOURTH OF THE COSTS TO BE PAID BY APPELLANT.**